IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARMANDO NAVAR, ) | |
| ) | |
| Movant, ) | No. 10 C 4874 |
| ) | |
| ) | Honorable Charles R. Norgle |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the Court is Armando Navar's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Movant Armando Navar ("Navar"), challenges his sentence for conspiring to distribute cocaine, distributing over five kilograms of cocaine, and three counts of using a communication facility during a felony. Also before the Court is Navar's Post Trial Motion to Enforce Discovery Pursuant to Federal Rule of Criminal Procedure 6(a)(b) of the Rule Governing § 2255 Habeas Corpus and Rule 16(a) Brady Material. For the reasons stated below, the Motions are denied.

### I. BACKGROUND[1]

**A. Facts**

In 2003, the Drug Enforcement Administration began investigating a drug trafficking organization led by Sual Saucedo ("Saucedo") that smuggled substantial quantities of cocaine

---

[1] A detailed description of the events underlying Navar's convictions is recited in United States v. Recendiz, 557 F.3d 511 (7th Cir. 2009).

1

from Mexico into the United States and transported it in the greater Chicago, Illinois area and elsewhere for distribution. Navar, Saucedo's brother-in-law, was a high level operative in the organization in Chicago. In this capacity, he regularly supplied large quantities of cocaine to "brokers" for the Saucedo organization. The brokers sold the cocaine to wholesale customers in the Chicago area, and would send the payment back to Navar. Millions of dollars in cash proceeds were packaged and smuggled back to Saucedo in Mexico.

**B. Procedural History**

On April 1, 2004, a grand jury indicted eleven defendants who were involved in the conspiracy to distribute drugs for the Saucedo organization, one of whom was Navar. The indictment charged Navar with conspiring to distribute cocaine in violation of 21 U.S.C. § 846, distributing over five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1), and three counts of using a communication facility during a felony in violation of 21 U.S.C. § 843(b). On September 20, 2005, Navar and his co-defendant Marco Thomas ("Thomas") proceeded to a jury trial. Prior to trial, Defendants Jesus Herrera ("Herrera") and Ahmed "Eddie" Tmiri ("Tmiri") accepted plea agreements and agreed to testify against Navar and Thomas. On October 3, 2005, the jury found Navar and Thomas guilty of each count of the superseding indictment.

On May 9, 2006, the Court held Navar's sentencing hearing; he was sentenced to 324 months of imprisonment. Navar presented the following issues on direct appeal, which were rejected by the Seventh Circuit: (1) that Navar's counsel made certain comments during his opening statement that improperly shifted the burden of proof, thereby violating his Fifth Amendment right to due process; (2) that the Court erred in admitting identification testimony (a) by permitting Tmiri to leave the witness stand to identify Navar as the individual known as "the

Doctor," and (b) by permitting a special agent to identify Navar's voice on a previously recorded conversation between Navar and Herrera; (3) that the Court erred in permitting a special agent to explain the process by which he obtained permission to wiretap Herrera's telephone number; (4) that the Court erred by restricting Navar's counsel's cross-examination of Herrera; and (5) that Navar's counsel provided ineffective assistance (a) by his confident statements regarding the burden of proof during his opening statement, (b) by failing to request that the Court instruct the jury concerning Herera's and Tmiri's plea agreements at the time of their testimony, and (c) by failing to request a jury instruction for a special agent's voice identification similar to those provided for an eyewitness identification. See generally United States v. Recendiz, 557 F.3d 511 (7th Cir. 2009).

On August 3, 2010, Navar filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Subsequently, on February 1, 2011, Navar filed the instant motion to conduct discovery pursuant to the Rules Governing § 2255 Cases Rule 6 together with a motion to extend time to file a response until thirty days after the resolution of his motion for discovery.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255. "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). This relief is available only in limited circumstances, such as where an error is jurisdictional, of

constitutional magnitude, or where there has been a "'complete miscarriage of justice.'" See Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991)). Section 2255 states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). If the Court determines that any of these grounds exists, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b). In making that determination, the Court must review the evidence and draw all reasonable inferences therefrom in the light most favorable to the government. United States v. Galati, 230 F.3d 254, 258 (7th Cir. 2000).

A § 2255 motion is subject to various bars, including that of procedural default. Indeed, a § 2255 motion is "'neither a recapitulation of nor a substitute for a direct appeal.'" McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996) (quoting Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994)). Therefore, a § 2255 motion cannot raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional issues that were not raised on direct appeal, unless the movant can demonstrate cause and prejudice for the failure to raise them. Belford, 975 F.2d at 313; see also Strang v. United States, 134 F.3d 374 (7th Cir. 1998) (unpublished table decision).

## B. Ineffective Assistance of Trial Counsel

Navar advances four theories of ineffective assistance of trial counsel. Ground one asserts that Navar's trial counsel, Ralph E. Meczk and Laurence H. Hyman, were ineffective for failure to request Seventh Circuit Pattern Criminal Jury Instructions as to the conspiracy count. Similarly, ground two asserts that Navar's rights to effective assistance of counsel and due process were violated when trial counsel failed to request Seventh Circuit Pattern Criminal Jury Instructions and the Court failed to administer such instructions. Grounds three and four assert that Navar's trial counsel were ineffective for inadequately cross-examining Tmiri and Herrera, respectively.

Although the Sixth Amendment affords criminal defendants the right to effective assistance of counsel, "'effective' does not mean successful or without flaw." Recendiz, 557 F.3d at 531. "The important inquiry is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Id. (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)). In evaluating effective assistance of counsel, courts employ the two-pronged test outlined by the Supreme Court in Strickland. To prevail on his ineffective assistance of counsel claims, Navar must establish both: (1) that his counsel's performance was objectively deficient; and (2) that the deficiency prejudiced him. Strickland, 466 U.S. at 700; Gant v. United States, 627 F.3d 677, 682 (7th Cir. 2010) (citations omitted). In other words, Navar must show: (1) that his counsel's performance "fell outside the wide range of competent representation"; and (2) that there is a "reasonable probability that but for his counsel's mistakes, the result of the proceedings below would have been different, such that the proceedings were fundamentally unfair or unreliable."

5

United States v. Jones, 635 F.3d 909, 915 (7th Cir. 2011) (citations omitted).

In assessing counsel's performance, the Court's review is "highly deferential." United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002). There is a strong presumption that Navar's counsel at trial and on appeal performed reasonably. See Wyatt v. United States, 574 F.3d 455, 458 (7th Cir. 2009); see also Yu Tian Li v. United States, No. 11-1231, slip op. at 3 (7th Cir. Aug. 4, 2011). Accordingly, to establish deficient performance, Navar must show "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment." Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

Failure to establish either deficient performance or prejudice is fatal to Navar's claim. Gant, 627 F.3d at 682 (citing Eddmonds v. Peters, 93 F.3d 1307, 1313 (7th Cir. 1996)). Indeed, "[c]ourts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question of counsel's actual performance." United States v. Taylor, 569 F.3d 742, 748 (7th Cir. 2009) (citations omitted). With these principals in mind, the Court addresses Navar's claims.

### *1. Seventh Circuit Pattern Criminal Jury Instructions*

Navar argues that by failing to request Seventh Circuit Pattern Criminal Jury Instructions as to (1) mere presence and (2) aiding and abetting, his counsel provided ineffective assistance. He also contends that his right to due process was violated because the Court failed to administer such instructions. As an initial matter, the Court notes that "[i]t is a rare case in which an improper jury instruction will justify upsetting a criminal conviction." United States v. Jackson, 479 F.3d 485, 491 (7th Cir. 2007) (citing United States v. Peters, 435 F.3d 746, 754 (7th Cir. 2006)). "Jury instructions are sufficient if, taken together, they convey the issues 'fairly and

accurately.'" United States v. Johnson, 584 F.3d 731, 739 (7th Cir. 2009) (quoting United States v. Souffront, 338 F.3d 809, 834 (7th Cir. 2003)).

### *a. Instruction 5.11—Mere Presence*

Navar argues that his counsel's failure to request the mere presence Seventh Circuit Pattern Criminal Jury Instruction and the Court's "omission" of this instruction, "lower[ed] the government's burden of proof." Mem. of Law in Supp. of Armando Navar's Pet. for a Writ of Haveas [sic] Corpus Pursuant to 28 U.S.C. § 2255, at 10. The mere presence instruction provides that "a defendant's presence at the scene of a crime and knowledge that a crime is being committed is not alone sufficient to establish the defendant's guilt." Seventh Circuit Pattern Criminal Jury Instruction 5.11(a). The Seventh Circuit Pattern Criminal Jury Instruction Committee's position is that the mere presence instruction should be used in a "limited fashion" and that it "might be appropriate" in situations "where a defendant is present and takes some action which is the subject of conflicting testimony." Id. Committee Cmt. Consistent with this principle, the Seventh Circuit requires that "a defendant requesting a mere presence instruction must identify evidence consistent with a theory of mere presence." United States v. Glover, 497 F.3d 511, 519 (7th Cir. 2009) (citations omitted). Indeed, "[a]lthough a defendant is entitled to have his *theory* presented to the jury, however, he is not entitled to have his particular instruction tendered." United States v. Paters, 16 F.3d 188, 190-91 (7th Cir. 1994) (citations omitted). Here, Navar has not identified any evidence that would warrant such an instruction, and therefore cannot establish that his counsel performed inadequately.

In an abundance of caution, however, the Court considers whether Navar was prejudiced. Assuming *arguendo* that Navar's counsel should have requested this instruction and the Court

should have given it, any deficiencies were cured. During closing argument, for example, Navar's counsel stated, "There is no guilt by association in this country." Tr. 1041. Additionally, "other instructions indicating that presence alone is insufficient for conviction can cure any deficiency caused by not giving a mere presence instruction." Glover, 479 F.3d at 519. Here, the Court's jury instructions conveyed the issues fairly and accurately, indicating that presence alone is insufficient.

The Court instructed the jury that Navar had been charged with conspiring to distribute in excess of five kilograms of cocaine and that "[a] conspiracy is an agreement between two or more persons to accomplish an unlawful purpose." Tr. 1113. Further, the Court instructed the jury that the government had the burden of proving: "First, that the conspiracy as charged in Count 1 existed; Second, that defendant knowingly became a member of the conspiracy with an intention to further the conspiracy." Tr. 1113-14. Moreover, in explaining several principles of conspiracy law the Court instructed the jury, for example, that: (1) "[t]he government must prove beyond a reasonable doubt that the defendant was aware of the common purpose and was a willing participant"; (2) "[t]he existence of a simple buyer-seller relationship between a defendant and another person without more is not sufficient to establish a conspiracy even where the buyer intends to resell the cocaine"; and (3) "[t]he fact that a defendant may have bought cocaine from another person or sold cocaine to another person is not sufficient without more to establish that a defendant was a member of the charged conspiracy." Tr. 1114-16. These instructions were more than sufficient to correctly inform the jury of the applicable law. See Golver, 479 F.3d at 519 (rejecting a mere presence jury instruction argument where the jury was instructed that to find the defendant guilty, they had to find that the defendant "knowingly

possessed the firearm and drugs"). Accordingly, Navar's mere presence jury instruction claim fails.

### b. Instruction 5.06—Aiding and Abetting

Next, Navar argues that the "record is silent" with respect to the aiding and abetting jury instruction and that his counsel's failure to request this instruction and the Court's "omission" of this instruction "impermissibl[y] erased" the government's burden of proof. Mem. of Law in Supp. of Armando Navar's Pet. for a Writ of Haveas [sic] Corpus Pursuant to 28 U.S.C. § 2255, at 18. Under 18 U.S.C. § 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a). The aiding and abetting instruction provides that "[i]f a defendant knowingly caused the acts of another, the defendant is responsible for those acts as though he/she personally committed them." Seventh Circuit Pattern Criminal Jury Instruction 5.06(b). The Seventh Circuit has defined an aider and abettor as one who, "knowing what the principal was trying to do, rendered assistance that he believed would (whether or not he cared that it would) make the principal's success more likely—in other words did what he could do or what he was asked to do to help make success more likely." United States v. Ortega, 44 F.3d 505, 508 (7th Cir. 1995) (citations omitted).

As an initial matter, the Court notes that Navar has failed to provide any evidence that warrants an aiding and abetting instruction. To the contrary the jury heard testimony from Herrera and Tmiri regarding Navar's substantial involvement in the cocaine conspiracy. Tr. 158, 480. Herrera identified Navar's voice on thirty-nine phone calls concerning the cocaine-

9

distribution conspiracy.[2] During the calls, Herrera and Navar spoke in coded conversation, using numbers to represent the quantity of cocaine and code words for cocaine. Tr. 173. On one occasion, for example, Navar used code to inform Hererra that he had approximately 1,000 kilograms of cocaine available. Id. at 269. Because the jury heard evidence consistent with Navar's involvement as a principal, the record did not warrant an aiding and abetting instruction. See United States v. Powell, No. 10-2535, 2011 WL 2712969, at *3 (7th Cir. July 13, 2011) ("[A]n instruction on aiding and abetting may be given 'so long as the evidence warrants the instruction and no unfair surprise results.'" (quoting United States v. Ruiz, 932 F.2d 1174, 1180 (7th Cir. 1991))). Accordingly, this claim fails outright.

## 2. *Cross-Examination of Tmiri and Herrera*

Navar contends that his trial counsel provided ineffective assistance because they failed to impeach Timiri and Herrera through cross-examination. "The Sixth Amendment guarantees a defendant an opportunity for effective cross-examination, but there is no guarantee of cross-examination 'to whatever extent[] the defense might wish.'" Recendiz, 557 F.3d at 530 (quoting United States v. Jackson, 540 F.3d 578, 591 (7th Cir. 2008)) (alteration in original). Navar therefore has the "burden of supplying sufficiently precise information, of the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing whether such information [] would have produced a different result." United States v.

---

[2] Call Nos. 2 (Tr. 179), 6 (Tr. 181), 7 (Tr. 182), 14 (Tr. 185), 15 (Tr. 185), 18 (Tr. 186), 23 (Tr. 186), 27 (Tr. 187), 28 (Tr. 188), 47 (Tr. 191), 64 (Tr. 192), 65 (Tr. 195), 66 (Tr. 195), 85 (Tr. 199), 115 (Tr. 214), 124 (Tr. 218), 131 (Tr. 218), 132 (Tr. 219), 140 (Tr. 222), 145 (Tr. 225), 156 (Tr. 226), 163 (Tr. 227), 165 (Tr. 228), 171 (Tr. 228), 175 (Tr. 229), 176 (Tr. 231), 181 (Tr. 231-32), 185 (Tr. 233-34), 201 (Tr. 235), 222 (Tr. 241), 229 (Tr. 242), 249 (Tr. 254), 253 (Tr. 258), 254 (Tr. 259), 261 (Tr. 263), 262 (Tr. 264), 331 (Tr. 275), 352 (Tr. 278), 358 (Tr. 278).

Rodriguez, 53 F.3d 1439, 1449 (7th Cir. 1995) (internal quotation marks and citation omitted).

### *a. Timiri*

Navar challenges his counsel's failure to ask Timiri the following questions: "(1) do you always we[ar] glasses, (2) do you we[ar] glasses while you drive, (3) do you have your driver license with you if yes, ask the court's permission to show his driver license to the jury to verify whether or not he do[es] wear glasses, (4) and if all of the above were negative to ask him, to produce his immigration card." Mem. of Law in Supp. of Armando Navar's Pet. for a Writ of Haveas [sic] Corpus Pursuant to 28 U.S.C. § 2255, at 24-25. Navar appears to argue that since Timiri was only able to identify Navar from a short distance without his glasses, he was therefore "lying under 'oath' when he testified that he had see[n] Navar[] 'twenty times or more." Id. at 24. Further, Navar argues that "[t]his evidence was crucial to Mr. Navar's case because witness credibility was the gist to the government's case." Id. at 25.

Navar, however, cannot show that his counsel's performance was constitutionally deficient. Navar's counsel challenged Tmiri's truthfulness with the Court, Tmiri's wife, Tmiri's employer, and others. Tr. 521-22, 534, 531, 533-34. Counsel cross-examined Tmiri regarding illegal conduct (both related and unrelated to drugs) that Tmiri had engaged in. Id. at 534, 542-46. Further, counsel challenged Tmiri's memory of Navar and his lack of knowledge regarding Navar. Id. at 536, 538-39. Counsel also cross-examined Tmiri regarding his bias and motivation for testifying. Id. at 540, 599. The record does not support a finding that Navar's counsel committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment." Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

Moreover, Navar cannot establish that there is a reasonable probability that but for his

counsel's failure to undertake his desired investigation, the information obtained would have produced a different result. In addition to hearing counsel's thorough cross-examination of Tmiri, the jury was cautioned regarding Tmiri's testimony. The Court instructed the jury that they had:

> heard testimony from Ahmed Tmiri who: One, received benefits from the government in connection with this case; namely, the recommend[ation] of a reduced sentence. Two, stated that he was involved in the offense of conspiracy as charged against the defendants; Third has pleaded guilty for an offense arising out of the same occurrence for which the defendants are now on trial. His guilty plea is not to be considered against the defendants. You may give his testimony such weight as you feel it deserves keeping in mind that it must be considered with caution and great care.

Tr. 1110. Accordingly, Navar cannot show that he was prejudiced. Because Navar cannot satisfy the requirements under Strickland, his claim fails.

### *b. Herrera*

Navar argues that his counsel only superficially cross-examined Herrera in relation to Herrera's gun shot wound. Mem. of Law in Supp. of Armando Navar's Pet. for a Writ of Haveas [sic] Corpus Pursuant to 28 U.S.C. § 2255, at 30-31. According to Navar, his counsel failed to ask Herrera the following questions: "(1) when the shooting occurred[,] (2) which Hospital give you medical attention[, and] (3) what kind of information you provide to the police or investigator, since the law in Chicago requires that any gun shot wound be immediately reported to the proper authorities." Id. at 30. Navar claims this information was "crucial" because it "would severely under cut" the credibility of the government's "stronger witness." Id. Navar argues that Herrera "was so maliciously against Navar this his testimony against Navar was so full of lies that his contradictions were noticed by Mr. Collin[s] the prosecutor." Id.

Navar, however, cannot satisfy either prong of the Strickland analysis. First, Navar's counsel did not provide objectively unreasonable assistance in the cross-examination of Herrera. As the Seventh Circuit noted on direct appeal, "[t]he jury in this case heard Herrera explain that he was testifying pursuant to a plea agreement, and that in exchange for his truthful testimony, the government would advocate for a lower sentence." Recendiz, 557 F.3d at 531. The Seventh Circuit determined that the jury had "more than enough information to appraise Herrera's motive to lie." Id. Further, Navar's counsel cross-examined Herrera about how he had violated his oath by dealing drugs while he worked as an auxiliary police officer, and exposed his conflicting accounts regarding his involvement with drugs. Tr. 306-11, 322. Navar's counsel also challenged Herrera's account that he had shot himself in the hand by asking him about his experience with guns, including gun-safety training that he had received, and questioned him about alternative explanations for his gunshot wound. Id. at 312-15, 317-18. Additionally, Navar's counsel impeached Herrera with his grand jury testimony and challenged his credibility by exposing conflicting and incomplete information he had provided to law enforcement. Id. at 324-26, 330-47, 350-51, 370-71. The record does not support a finding that Navar's counsel fell outside the wide range of reasonable professional assistance.

Second, Navar cannot show that he was prejudiced by his counsel's failure to undertake his desired investigation. In addition to hearing counsel's thorough cross-examination of Herrera, the jury was cautioned regarding Hererra's testimony. The Court instructed the jury that they had:

> heard testimony from Jesus Herrera who: One, received benefits from the government in connection with this case; namely, the recommendation of a reduced sentence. Two, stated that he was involved in the offense of conspiracy as charged

13

> against the defendants; Three, has pleaded guilty to an offense arising out of the single occurrence for which the defendants are now on trial. His guilty plea is not to be considered against the defendants. You may give his testimony such weight as you feel it deserves keeping in mind that it must be considered with caution and great care.

Tr. 1109-10. In light of these instructions and Hererra's cross-examination, Navar cannot establish that there is a reasonable probability that but for his counsel's failure to undertake his desired investigation, the information obtained would have produced a different result. Navar cannot satisfy either <u>Strickland</u> prong; his claim therefore fails.

## C. Ineffective Assistance of Appellate Counsel

According to Navar, his appellate counsel, Frederick F. Cohn, "rendered ineffective assistance during the appeal process by failing to argue[] the missing jury pattern instruction to the jury, also by arguing the ineffective assistance of counsel[] on direct appeal." Mem. of Law in Supp. of Armando Navar's Pet. for a Writ of Haveas [sic] Corpus Pursuant to 28 U.S.C. § 2255, at 35. To establish that his appellate counsel was ineffective, he must satisfy the familiar two-pronged <u>Strickland</u> test. See, e.g., <u>Suggs v. United States</u>, 513 F.3d 675, 678 (7th Cir. 2008). "Only if an ignored issue is 'clearly stronger' than the arguments raised on appeal will the attorney's performance be considered constitutionally deficient (thereby satisfying the first prong of the <u>Strickland</u> test)." <u>Id.</u> To establish prejudice (the second prong of the <u>Strickland</u> test), Navar must show "that there is a reasonable probability that, but for the deficient performance of his attorney, the result of the appeal would have been different." <u>Id.</u> (citing <u>Strickland</u>, 466 U.S. at 694). Navar's claim of ineffective assistance of appellate counsel, however, is undeveloped and cannot satisfy these requirements.

As an initial matter, the Court notes that Navar has failed to allege specific prejudice

arising out of his appellate counsel's alleged deficiency. The Court therefore need not address the alleged errors or omissions individually. United States v. Hattermann, 853 F.2d 555, 559 n.9 (7th Cir. 1988). In an abundance of caution, however, the Court addresses the merits of Navar's claim. Because Navar's ineffective assistance of appellate counsel claim is "predicated on trial counsel's errors, the two claims rise and fall together." Johnson v. Thurmer, 624 F.3d 786, 793 (7th Cir. 2010) (citing Robertson v. Hanks, 140 F.3d 707, 712 (7th Cir. 1998)). As explained above, the mere presence and aiding and abetting jury instruction issues are without merit. Because the Court has concluded that Navar's trial counsel was not deficient, "any ineffective assistance of trial counsel claim was comparably weaker than the other issues raised by appellate counsel." Id. Similarly, the jury instruction issues "would not have had any appreciable impact on the denial of his appeal." Id. As such, Navar can establish neither that his appellate counsel's performance was deficient nor that he was prejudiced therefrom. Thus, this claim must fail.

## D. Request to Conduct Discovery

Navar requests leave to conduct discovery as to the police report and medical record of Herrera and the driver's license or passport of Tmiri in order to prove grounds three and four of his § 2255 motion. He alleges that Herrera and Tmiri both perjured themselves at trial and therefore their testimony was unreliable. A § 2255 movant, "unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Instead, it is within the Court's discretion under Rule 6 Governing § 2255 Cases to authorize a party to conduct discovery upon a movant's specific showing of good cause. Hubanks v. Frank, 392 F.3d 926, 933 (7th Cir. 2004); Rules Governing § 2255 Cases R. 6(a). Under Rule 6, the movant must "(1) make a colorable claim showing that the underlying facts, if

proven, constitute a constitutional violation; and (2) show 'good cause' for the discovery." Hubanks, 392 F.3d at 933 (citations omitted).

"Good cause" means that the movant must present specific allegations that give a court "'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is [] entitled to relief.'" Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). "Good cause, however, cannot exist where the facts alleged do not provide a basis for relief." Hubanks, 392 F.3d at 933 (citing Matta-Ballesteros v. Henman, 896 F.2d 255, 259 (7th Cir. 1990)). Here, the facts Navar alleges do not provide a sufficient basis for relief to permit him to invoke discovery. "This is not a case with 'good cause' that warrants discovery." Glascoe v. Bezy, 421 F.3d 543, 549 (7th Cir. 2005) (citing Matta-Ballesteros, 896 F.2d at 259). Further inquiry would amount to no more than an unfounded and improper fishing expedition. See Cuomo v. Clearing House Ass'n, L.L.C., 129 S. Ct. 2710, 2719 (2009) ("Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through . . . records for evidence of some unknown wrongdoing."). The Court therefore denies Navar's request to conduct discovery.

## III. CONCLUSION

For the reasons discussed above, the Motions are denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: August 10, 2011